pending suit, since it had only a future, not a retroactive effect, and merely operated to hold in abeyance further steps in the suit, such as entry of judgment, which could not be had until the expiration of the extended time.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 752–755; Dec. Dig. ☞70.]

Appeal from Trial Term, Westchester County.

Action by the Westchester Mortgage Company against Thomas B. McIntire, Incorporated, and William H. Foster. From a directed verdict for plaintiff, defendant Foster appeals. Affirmed.

See, also, 153 N. Y. Supp. 437.

Argued before JENKS, P. J., and THOMAS, STAPLETON, RICH, and PUTNAM, JJ.

Frederick B. Van Kleeck, Jr., of White Plains, for appellant.
Jonathan Holden, of Pleasantville, for respondent.

PUTNAM, J. Defendant raises the effect of an extension of time of payment of a note already in suit. After the maker and guarantor were in default, the holder extended the note in suit, and two others, from July 14th to August 1st. Such indulgence did not discharge appellant as guarantor, because in the previous March he had agreed in writing to one or more extensions, if in all not over six months. But appellant urges that this written extension of payment had a retroactive effect, and amounted to a withdrawal of the pending suit, in which he was already in default. We cannot, however, read into this extension (which only gave further time to pay the note) such enlargement of its scope and effect. It looked to the future, and made no mention of the suit which had been regularly instituted. It would be going far to say that such forbearance tacitly discontinued the suit, so that if the note should be not paid on August 1st, plaintiff would have to begin a new action. The words used and the intent to be presumed meant only that further steps in the suit and the entry of judgment were to be held in abeyance. If not paid when the time was up, the note could then be put in judgment. We may look also at the effect of a contrary holding. To such a kindly forbearance it would annex legal consequences, which would tend to discourage courtesy and indulgence to one served with process, while the policy of the law should favor a reasonable respite to a debtor in temporary difficulty.

The judgment should therefore be affirmed, with costs. All concur.

---

PEOPLE ex rel. NEW YORK JUVENILE ASYLUM v. BOARD OF SUP'RS OF NASSAU COUNTY.

(Supreme Court, Appellate Division, Second Department. June 17, 1915.)

1. INFANTS ☞16—DELINQUENT AND DISORDERLY CHILDREN—LIABILITY FOR SUPPORT.

Penal Law (Consol. Laws, c. 40) § 486, declares that any child actually or apparently under 16 years old, who is found not having any home or other place of abode, or proper guardianship, must be brought before a a proper court or magistrate, who may commit the child to any incorpo-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

rated charitable reformatory or other institution, or may dispose of the child as authorized in the case of vagrants, truants, paupers, or disorderly persons. Subdivision 7 declares that all children actually or apparently under 16 years old, who desert their home without good cause and keep company with villainous persons, shall be deemed disorderly and may be so disposed of; while subdivision 8 declares that children convicted of a misdemeanor shall not be committed, longer than is necessary for transfer, to a prison, jail, or penitentiary, but to an institution authorized by law to receive children on final commitment. Poor Law (Consol. Laws, c. 42) § 56, declares that no child under 16 years of age shall be committed as a vagrant or disorderly person to any jail or county almshouse, but to some reformatory, or other institution as provided for in the case of juvenile delinquents, that when such commitment shall be made notice shall be immediately given to the superintendent of the poor or other authorities having charge of the poor of the county in which the commitment is made, that no county superintendent or overseer of the poor shall send any child under 16 years old as a poor person to any county almshouse, but shall provide for such child in families, orphan asylums, or other appropriate institution, and that the board of supervisors of the several counties and the board of estimate and apportionment of the city of New York shall take such action as may be necessary to carry out the law. *Held* that, in view of the distinction between children and adult criminals, children, not having any home, guardian, or who are disorderly and ungovernable, or have been guilty of petit larceny, shall be committed to proper institutions, and the county is liable for their support.

[Ed. Note.—For other cases, see Infants, Cent. Dig. § 16; Dec. Dig. ☞16.]

2. INFANTS ☞16—OFFENSES.
The duty of sending a child under 16 years to school being upon its parents, the child is guilty of no offense because not sent to school, and so cannot be committed to an institution, under Penal Law, § 486, and the county held liable for its support.

[Ed. Note.—For other cases, see Infants, Cent. Dig. § 16; Dec. Dig. ☞16.]

Certiorari by the People, on the relation of the New York Juvenile Asylum, against the Board of Supervisors of the County of Nassau, to review the board's action in disallowing the claims. Action reversed, save as to one claim.

Argued before JENKS, P. J., and THOMAS, CARR, STAPLETON, and PUTNAM, JJ.

Lloyd M. Howell, of New York City, for relator.
Charles T. McCarthy, of Glen Cove, for respondent.

THOMAS, J. The certiorari is to review the action of the board of supervisors of the county of Nassau in disallowing, upon the ground that they are not a county charge, bills presented by the relator for the support of ten children committed to its institution.

Four children not having "proper guardianship" were committed, pursuant to Penal Law, § 486, which provides that:

"Any child actually or apparently under the age of sixteen years who is found, * * * not having any home or other place of abode or proper guardianship, * * * must be arrested and brought before a proper court or magistrate, who may commit the child to any incorporated charitable reformatory, or other institution, * * * or may make any disposition of

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the child. such as now is, or hereafter may be authorized in the cases of vagrants, truants, paupers or disorderly persons, but such commitment shall, so far as practicable, be made to such charitable or reformatory institutions."

Three children were committed severally as "disorderly or ungovernable," in violation of subdivision 7 of such section 486 of the Penal Law, which describes children under the age of 16 years who are disorderly, and children who are ungovernable, and authorizes commitment as above stated. Two children were committed for violation of Penal Law, § 1298, after conviction for petit larceny. One child was committed because he was not sent to school.

[1, 2] The duty of sending a child to school is placed upon the person standing in parental relation, and, if there was a violation, such person was the offender. The punishment for his sins does not fall on the descendant. Whether the matter, upon proper proof, would fall under the Education Law (Consol. Laws, c. 16) § 536, and section 537, subds. 4 and 9, we do not now decide. Passing those convicted of petit larceny, the other children are not criminals and are dissociated from criminals, but are given the status of vagrants, truants, paupers, and the disposition that is authorized for such persons is provided for them. The Penal Code (subdivision 8 of section 486) provides that children convicted of a misdemeanor shall not be committed, longer than is necessary for transfer, to a prison, jail or penitentiary, but to "an institution authorized by law to receive children on final commitment." But such subdivision does include an institution authorized "to have compensation therefor from the city or county authorities."

Another statute aids solution. Section 56 of the Poor Law provides:

"No justice of the peace, board of charities, police justice, or other magistrate, or court, shall commit any child under sixteen years of age, as a vagrant, truant or disorderly person, to any jail or county almshouse, but to some reformatory, or other institution, as provided for in the case of juvenile delinquents; and when such commitments are made, the justice of the peace, board of charities, police justice, or other magistrate or court making the same, shall immediately give notice to the superintendents of the poor or other authorities having charge of the poor of the county in which the commitment was made, giving the name and age of the person committed, to what institution, and the time for which committed; nor shall any county superintendents, overseers of the poor, board of charity, or other officer, send any child under the age of sixteen years, as a poor person, to any county almshouse, for support and care, or retain any such child in such almshouse, but shall provide for such child or children in families, orphan asylums, hospitals, or other appropriate institutions for the support and care of children as provided by law, except that a child under two years of age may be sent with its mother, who is a poor person, to any county almshouse, but not longer than until it is two years of age. The boards of supervisors of the several counties, and board of estimate and apportionment of the city of New York, and the appropriate board or body in other cities and towns shall take such action in the matter as may be necessary to carry out the provisions of this section. * * *"

There certain information is required to be given to the superintendents of the poor of the county. It is the information that an official charged with the support would need. The boards of supervisors of counties are charged with the duty of carrying out the act. If, however, vagrants, truants, and disorderly persons fall under the charge

of the county officials, the children above named, who are by statute of a similar status and assimilated to them for reformatory treatment, and associated with them in places of detention, would seem to be charged on the county. The policy of the state is to confine adults who are disorderly or who have committed petit larceny in the jails of the county, and the expense of support then falls upon the county. County Law (Consol. Laws, c. 11) § 240. The offense determines the place of confinement, and the place of confinement designates the political subdivision that shall bear the expense. The child under the age of 16, capable of committing petit larceny and convicted thereof, has committed the same offense as an adult; but for his welfare he is confined, not in jail, but in an institution of the nature described. The interesting opinion in St. Agnes Training School v. County of Erie, 68 Misc. Rep. 648, 124 N. Y. Supp. 984, reaches the conclusion that, as the expense of confining adult offenders of the kind named would burden the county, the expense thereof would fall on the county, although the offender was sent, not to a county jail, but to an institution similar to that of the relator.

This seems to raise the question whether the county is liable for the support of a person who is disorderly, or who has committed larceny, irrespective of the place of confining him, or whether it is liable for the maintenance of the county jail, and the persons committed there, charged with or convicted of crimes. However that may be, the present question is: What body shall in the first instance pay the relator for the care of children (1) not having proper guardianship; (2) disorderly or ungovernable; (3) guilty of petit larceny, and all similarly confined. The Penal Law (section 486) points out the place of confinement, and among other things states that the disposition of them may be the same as authorized "in the cases of vagrants, truants, paupers or disorderly persons." But the amendatory act of 1879 (chapter 240) states what may and may not be done with the classes of children named, and requires notice to the superintendent of the poor of the county and imposes on the boards of supervisors the duty of taking "such action in the matter as may be necessary to carry out the provisions of this act." Why give notice to the superintendent of the poor if it be a matter of indifference to the county? What action is it intended that the board of supervisors shall take? The substantial thing to be done is to see to it that the children are supported in a proper institution. That is the essential action in making the act effective—provision for proper support in an authorized institution. It is useless to speculate upon what other acts the county officers could do. Without the vital act of payment for support, the statute becomes useless. So let the board of supervisors do what the state has commanded.

The action of the respondent in disallowing the claim, save in the case of the child Abrams is reversed, and the claim allowed, except as named, with interest from January 14, 1915, without costs, as one claim is rejected. All concur.